C. H. MOORE ET AL. v. W. L. HANSCOM, ADMINISTRATOR, ET AL.

No. 1782. Decided January 22, 1908.

**1.—Guardian—New Bond—Settlement—Discharge of Sureties.**

A guardian who had misappropriated funds of the estate borrowed money to replace the full amount, which he deposited in a solvent bank, taking a certificate of deposit thereof as guardian which, with other securities, he placed in the hands of sureties who executed with him a new bond; thereupon by order of the County Court this was accepted in lieu of the former bond and the first sureties discharged from liability. Held that the deposit became the property of the ward's estate, and complete restitution having been made, the former bond was satisfied and the sureties upon it released by the order; nor could this result be affected by any purpose on the part of the guardian to get possession of the fund and again misapply it. (P. 300.)

**2.—Guardian—New Bond—Judgment—Collateral Attack.**

In a collateral attack a judgment of the Probate Court approving a new bond for a reduced amount given by a guardian and discharging the sureties upon the former bond, though such order appeared, on the face of the record, to be made on the application of the guardian upon grounds not authorizing such action by the court, the conclusive presumption will be that evidence was introduced showing the existence of facts which authorized the action, as that the previous bond was found, even if erroneously, to be insufficient or defective, or that the sureties thereon petitioned, though orally, to be released. (Pp. 300–303.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Galveston County.

*Kleberg, Davidson & Neethe,* for plaintiff in error Moore; *Harris & Harris,* for plaintiff in error Marx.—The County Court of Galveston County having jurisdiction as a probate court over the person of the guardian and the estate of Menard James, it had the jurisdictional power to approve a new bond of the guardian and to discharge the sureties of a prior bond, and the erroneous or defective execution by the County Court of this jurisdictional power does not render its orders or decrees with respect thereto null and void so as to make them subject to collateral attack, and it was error of the Court of Civil Appeals to hold to the contrary. Section 16, art. 5, Constitution of Texas; Arts. 1842, 2566, 2600, 2601, 2606, 2608, 2611, 2619, 1949, 1950, 1952, 1976, 2799 and all of chapter 10, title 39, Revised Statutes of Texas, 1895; Murchison v. White, 54 Texas, 78; Nelson v. Bridge, 98 Texas, 523; Crawford v. McDonald, 88 Texas, 626; Bouldin v. Miller, 87 Texas, 366; Heath v. Layne, 62 Texas, 690; Hines v. Givens, 68 S. W. Rep., 295; Herbert v. Harbert, 59 S. W. Rep., 595; Freedman v. Vallie, 75 S. W. Rep., 322; Bopp v. Hanford, 18 Texas Civ. App., 345; Sabrinos v. Chamberlain, 76 Texas, 624; Martin v. Robinson, 67 Texas, 379; Lewis v. Ames, 44 Texas, 319; Moody v. Butler, 63 Texas, 210; Williams v. Verne, 68 Texas, 414.

The Court of Civil Appeals erred in holding that the bond of the United States Fidelity & Guaranty Company of Baltimore, Md., inasmuch as the same was less than double the amount of the ward's estate, was not a valid statutory guardian's bond to the amount of the penalty therein, and was only a common law obligation, because said bond being conditioned as required by law and being duly

approved by the Propate court, a court having jurisdiction over the subject matter, the fact that the bond was less than double the value of the ward's estate could not affect or destroy its validity as a statutory obligation nor relieve the sureties thereon from liability to the extent of the penalty of the bond, as though said bond had been in double the amount of the value of the estate. Same authorities. Also Freeman v. Davis, 7 Mass., 200; Burroughs v. Lowder, 8 Mass., 373; Carver v. Carver, 77 Ind., 498; Brounty v. Daniels, 23 Neb., 162; Anderson v. Rhea, 7 Ala., 104; Ashley v. Brasil, 1 Ark., 144; 4 Enc. Law (2d ed.), 669; Stearns on Suretyship, 355.

As a matter of law, it must be inferred and presumed that the County Court duly considered the estimated value of the estate, and that in fixing the bond at $30,000 it adjudged the sum so fixed in the bond to be double the estimated value of the estate. Williams v. Verne, 68 Texas, 414; Carver v. Carver, 77 Ind., 498; Harbaugh v. Albertson, 102 Ind., 69; Anderson v. Rhea, 7 Ala., 104; Freeman v. Davis, 7 Mass., 200; Burroughs v. Lowder, 8 Mass., 373.

Moore and Marx in good faith and with the full knowledge of the said guaranty company, relied on the giving of the new bond by said company, and so relying surrendered and turned over to said guaranty company's principal, A. J. Compton, guardian, and to said company, all the securities and the certificate of deposit, being the very money for which this suit is brought, and being therefore in their possession, and so relying and so acting in good faith the said Moore and Marx, if held to the plaintiff for the subsequent defalcation of Compton, should, in equity and good conscience, be granted a judgment over against the said guaranty company for any loss which they may be ordered to make good to the plaintiff. Jones v Hays, 27 Texas, 1; Colorado City Natl. Bank v. Lester, 73 Texas, 546; Trueblood v. Knox, 73 Ind., 310; Carver v. Carver, 77 Ind., 498; Butler v. Wadley, 15 Ind., 502; Robertson v. Smith, 129 Ind., 422; Harbaugh v. Albertson, 102 Ind., 69; Deegan v. Deegan, 37 Pac. Rep., 360; Ordinary v. Heishon, 42 N. J. Law., 17; West v. Carter, 129 Ill., 249; Keithsburg & E. R. R. v. Henry, 90 Ill., 255; Parnill v. Calloway, 78 Va., 387; Stearns on Suretyship, pp. 20, 375, 376. 402

*Hunt, meyer & Townes, James B. & Chas. J. Stubbs* and *Wheeler & Clough,* for plaintiff in error, the U. S. Fidelity & Guaranty Co. —The Court of Civil Appeals erred in holding that the bond of the guaranty company was valid as a common law obligation, and that said company was therefore liable, because: (a) There was no pleading to justify such a judgment. (b) There was no consideration to support the guaranty company's bond as a common law obligation. (c) There could be no common law liability, because no damage was sustained by the estate of the ward on account of the execution and delivery of the bond by petitioner, nor was the estate thereby deprived of any asset or security. (d) There could be no contribution between this petitioner and Marx and Moore, the sureties on the second bond, there being no privity between them, and they not being bound by the same liability. (e) The bond of the guaranty company was

also void as contravening the policy of the law, which holds the sureties of the guardian upon his statutory bond liable for the full amount of any default. Leona I. M. & C. Co. v. Roberts, 62 Texas, 622; Johnson v. Erskine, 9 Texas, 1; Pierce v. Wallace, 48 Texas, 402; Wooters v. Smith, 56 Texas, 207; Murfree on Official Bonds, secs. 66, 67; Glasscock v. Hamilton, 62 Texas, 143; Pomeroy, Eq. Juris., sec. 916; Couchman v. Lisle, 33 S. W. Rep., 940; Gibson v. Shehan, 28 L. R. A., 400; Magill v. Brown, 50 S. W. Rep., 150; Justices v. Selman, 6 Ga., 432.

The Court of Civil Appeals erred in holding as matter of law that the defalcation occurred after the last bond had been executed, because it clearly appeared from the evidence that the conversion took place under the first bond of the surety company, and that no actual restitution was made. There was a pretense of so doing on the part of the guardian, but as a matter of fact the certificate of deposit did not represent funds belonging to the estate, but money which the guardian borrowed from his brother and his bankers and deposited in his own name. This certificate was only the promissory note of the bankers, and such note was not a part of the ward's property which he had received, nor was the consideration for it any of the funds of the estate. Certificate of deposit a promissory note. Wright v. Paine, 62 Ala., 344; Tripp v. Curtenius, 36 Mich., 496; Duncan v. Magette, 25 Texas, 249; Baker v. Kennedy, 53 Texas, 205; First Nat. Bank v. Greenville Nat. Bank, 84 Texas, 40; Miller v. Austen, 13 Howard, 218; Bank of Orleans v. Merrill, 2 Hill (N. Y.), 295; Moore v. Gano, 12 Ohio, 302; Kilgore v. Bulkley, 14 Conn., 363; Kirkwood v. First Nat. Bank, 40 Neb., 484 (24 L. R. A., 444); Leapheart v. Commercial Bank, 33 L. R. A., 700; Jockusch v. Towsey, 51 Texas, 129. As to what constitutes a payment: McKown v. Williams, 77 Mo., 471; Riggs v. Coleman, 73 Mo., 685; Mount v. Steele, 21 Ind., 209; Otto v. Halff, 34 S. W. Rep., 910; Hill v. Arnold, 116 Ga., 45; Joslin v. Giese, 36 Atlantic, 680 (N. J.); Hatch v. Hutcheson, 40 S. W. Rep., 578 (Ark.); Cassville Roller Mills v. Aetna Ins. Co., 79 S. W. Rep., 720 (Mo.); Born v. First Nat. Bank, 7 L. R. A., 442 (Ind.); National Bank v. Burlington, 9 L. R. A., 263 (Minn.); Alston v. Alabama, 92 Ala., 124 (13 L. R. A., 659); National Life Ins. Co. v. Goble, 51 Neb., 8 (70 N. W., 503). Any unauthorized dealing with the funds of the ward amounts to a conversion. Murph v. McCullough (Texas), 90 S. W. Rep., 69; Brown v. Fidelity Co., 76 S. W. Rep., 944; Frieberg v. DeLamar, 7 Texas Civ. App., 269; Hogshead v. State ex rel. Allen, 22 N. E., 331; Henderson v. Henderson, 58 Ala., 582; Arguello's Est., 97 Cal., 196; Forsyth v. Woods, 11 Wall., 484; Allen v. Leach, 29 Atl. Rep., 1052.

The law is, that if a surety has received any indemnity from the principal, he must share the benefit with his co-surety. Glasscock v. Hamilton, 62 Texas, 158; 7 A. & E. Ency. of Law, 343.

In Corrigan v. Foster, 51 Ohio State, 225; 37 N. E., 263, it was held that, where successive bonds with different sureties have been given, the liability of sureties in the subsequent bonds is secondary to that of sureties on the bonds in force at the time the estate was wasted.

*Maco & Minor Stewart,* for American Surety Co., defendant in error.—American Surety Company, having been discharged from liability by decree of County Court, was thereby fully released from all liability on bond, and the trial court should have instructed a verdict releasing it from claim of plaintiff and of Marx & Moore and U. S. F. & G. Co. Sayles' Rev. Stats., 1897, arts. 2562 and 2799; Bopp v. Hansford, 18 Texas Civ. App., 345; Sabrinos v. Chamberlain, 76 Texas, 624; Bouldin v. Miller, 87 Texas, 366; Nelson v. Bridge, 98 Texas, 523.

The order of discharge in the County Court and the subsequent decree approving annual account of guardian, charging him with moneys reported on hand, fix the liability for the assets on the sureties at date of decree so approving such annual account. Sayles' Rev. Stats., 1897, arts 2684, 2688 (accounts required to show "money on hand"); Coe v. Nash, 91 Texas, 120; Heath v. Layne, 62 Texas, 690; Bouldin v. Miller, 87 Texas, 366; Sabrinos v. Chamberlain, 76 Texas, 624; Bopp v. Hansford, 18 Texas Civ. App., 345; Frenkel v Caddou, 40 S. W. Rep., 638 (Texas); Morris v. Morris, 9 Heiskell, Tenn., 814; Fogarty v. Ream, 100 Ill., 375; Arizona v. Cook, 17 Pac. Rep., 10; Morley v. Town, 78 Ill., 394; Cook v. State, 13 Ind., 154; Sooy v. State, 41 N. J. Law, 394.

The misappropriation took place after making of last bond. Sargent v. Wallis, 67 Texas, 483; Frenkel v. Caddou, 40 S. W. Rep., 638; Schouler on Dom. Rel., sec. 367, p. 515; Stearns on Suretyship, p. 428, par. 241; Justices v. Woods, 1 Ga., 87, 88; Fogarty v. Ream, 100 Ill., 375; Johnson v. Jones, 68 S. W. Rep., 14; Black v. Kaiser, 16 S. W. Rep., 89; Independent School Dist. v. Hubbard, 81 N. W. Rep., 241

The court erred in instructing the jury, and in concluding that the turning over of the certificate of deposit by Compton to Marx & Moore did not constitute said certificate of deposit an asset of the estate of Menard James. Johnson v. Jones (Ky.), 68 S. W. Rep., 14; Black v. Kaiser, 16 S. W. Rep., 89; McWilliams v. Norfleet, 63 Miss., 183; Parker v. Medsker, 80 Ind., 155; Independent School Dist. v. Hubbard, 81 N. W. Rep., 241; Justices v. Woods, 1 Ga., 87, 88; Sheldon on Subrogation, page 185, par. 155.

The misappropriation of the assets of the estate of Menard James by A. J. Compton, if any, had been refunded and make good by said Compton after the release and discharge of the American Surety Co. of New York, and after the making of the new bonds, and thereby the subsequent sureties and not the American Surety Co. of New York would be liable. Independent Sch. Dist. v. Hubbard, 110 Iowa, 56; Paxton v. State, 59 Neb., 475; Alibone v. Ames, 33 L. R. A., 585; Parker v. Medsker, 80 Ind., 155; Fidelity Deposit Co. v. Mobile Co., 124 Ala., 144; Crawn v. Commonwealth, 84 Va., 282; McWilliams v. Norfleet, 63 Miss., 183.

The subsequent surety on the guardian's bond had no right or cause of action against the surety on a former bond. Oglesby v. State, 73 Texas, 658; Mitchell v. Dewitt, 25 Texas Sup., 181; 27 Am. & Eng. Ency. Law (2d ed.), 225; Tittle v. Bennett, 94 Ga., 405; Morris v. Morris, 9 Heiskell, Tenn., 814; Tennessee Hospital

v. Fuqua, 69 Tenn. (1 Lea), 608; Watts v. Pettit, 1 Bush (Ky.), 154; Brandt on Suretyship and Guaranty, p. 319, sec. 227, p. 637, sec. 497; Am. & Eng. Ency. Law, vol. 27, p. 225; Justice v. Woods, 1 Ga., 87-88; Johnson v. Jones, 68 S. W. Rep., 14; Black v. Kaiser, 16 S. W. Rep., 89; Sheldon on Subrogation, 151, par. 131.

Judgment against the defendant is contrary to the law and evidence, because it appears from the evidence that the subsequent bonds and sureties thereon were liable, and because the American Surety Company, of N. Y., had been released and discharged. Frenkel v. Caddou, 40 S. W. Rep., 638 (Tex.); Sargent v. Wallis, 67 Texas, 483; Mattoon v. Cowing, 79 Mass., 387; Black v. Kaiser, 16 S. W. Rep., 89; Johnson v. Hicks, 30 S. W. Rep., 3; McWilliams v. Norfleet, 63 Miss., 183; Justices v. Woods, 1 Ga., 87; Fogarty v. Ream, 100 Ill., 375; Independent School Dist. v. Hubbard, 81 N. W. Rep., 241; Paxton v. State, 59 Neb., 475, 476; Schouler on Domestic Relations, p. 515, sec. 367.

*Clay S. Briggs* and *John W. Campbell,* for defendant in error, Hanscom.—Appellant guaranty company's bond, was purely voluntary, as shown by the acts of its principal, the guardian, in his application to the court to be allowed to give a new bond, at the time appellants Moore and Marx were sureties on his bond. Janes v. Reynolds, Admr., 2 Texas, 256; Leona Irrigation Co. v. Roberts, 62 Texas, 622; Nelson v. Bridge, 98 Texas, 533; Colorado City Natl. Bank v. Lester & Hazzard, 73 Texas, 546; Marshall v. Bailey, 27 Texas, 687; Pierce v. Wallace, 48 Texas, 402; Johnson v. Erskine, 9 Texas, 10; King v. Frazer, 2 Texas App. Civ. Cas., sec. 788; Seeligson v. DeWitt, 1 Texas App. Civ. Cases, sec. 820.

The bond of a guardian not being necessary to the jurisdiction of the County Court over the person and estate of the ward, the action of the court in approving a bond for less than double the value of the property of the ward (though we deny the records show such to be the case here) can only be at most voidable, and this not being an original proceeding the same can not be attacked collaterally. Crawford v. McDonald, 88 Texas, 626; Murchison v. White, 54 Texas, 81, 82; Guilford v. Love, 49 Texas, 715; Rye v. Guffey Co., 95 S. W. Rep., 622; Dunn v. Taylor, 94 S. W. Rep., 349.

The court having jurisdiction to require a new bond, and this being a collateral attack, the question can not here be raised as to whether the facts existed which authorized the court to accept a new bond. Rev. Stats., art. 2600; Hines v. Givens, 68 S. W. Rep., 295, on question of general jurisdiction of court and right to require new bond.

The court having found the money to have been misappropriated during the life of the first bond, a good and valid demand is shown to have been created in favor of the estate against the American Surety Company, defendants in error, and no actual restoration being shown to have been made, this defendant in error is entitled to recover against the sureties on all the bonds of said guardians. Sargent v. Wallis, 67 Texas, 487.

The funds represented by the certificate of deposit were never

made the property of the ward by deposit in bank to his credit through his guardian, and the certificate was, if anything, no more than a good and valid demand note held by the person who was guardian of the property of the ward, with no evidence on the face or back of the obligation for whom he was guardian; and the guardian without authority of court could not discharge a claim against himself by delivering to his bondsmen the demand note held by him of his private bankers. Trammell v. Swan, 25 Texas, 500; Edmonson v. Garnett, Admr., 33 Texas, 259; Hamilton v. Pleasants, 31 Texas, 638; First Natl. Bank v. Greenville Natl. Bank, 84 Texas, 40.

Mr. Justice Brown delivered the opinion of the court.

On March 21, 1901, A. J. Compton was appointed guardian of Menard James, a person of unsound mind, and his bond fixed at the sum of $20,000 by the County Court. He gave the bond with the American Surety Company as his surety. The court approved the bond and Compton took the oath required by law, returned an inventory and received his letters of guardianship. Subsequently Compton returned another inventory into court which showed that the property of the estate was worth $38,056.83. The Probate Court of Galveston County entered the following order:

"In the matter of the estate of Menard James, non compos.
                                October 21, 1902.

"A. J. Compton, guardian of said estate, having filed herein a duly approved and conditioned bond in the sum of seventy-six thousand one hundred and thirteen 66-100 ($76,113.66), in lieu of the bond heretofore filed by him; it is ordered by the court that the bondsmen on his previous bond herein filed be and they are hereby discharged and relieved from all further liability herein; and the clerk will record the bond herein filed this day, in the minutes of the court."

The bond mentioned in the order above copied was executed by Compton as guardian and C. H. Moore and M. Marx as his sureties. On February 20, 1903, Compton applied to the court to reduce the bond for various reasons, none of which are embraced in the statute, and the court made this order:

"In the matter of the estate of Menard James, non compos.
                                March 3, 1903.

"Whereas the amount of bond required of A. J. Compton, as guardian of said estate, having been by an order of the court, duly made and entered herein on the 20th day of February, 1903, reduced to and fixed at the sum of thirty thousand dollars ($30,000), and said A. J. Compton having on this 3d day of March, 1903, presented to the judge of this court his bond as such guardian, made in pursuance of said order in said sum of $30,000, with the United States Fidelity & Guaranty Company of Baltimore, Maryland, as surety, which said bond has been duly approved by said judge and filed by the clerk of this court; Now, therefore, on this the 3d day of

March, 1903, it is ordered, adjudged and decreed by the court that C. H. Moore and M. Marx, the sureties on the bond of said A. J. Compton, as guardian of said estate, in the sum of $76,113.66, filed herein on the 21st day of October, 1902, be and they are hereby fully and completely discharged from all liability as such sureties henceforth."

On April 23, 1904, Compton reported cash on hand $11,718.91. Compton died and the County Court of Galveston County directed S. S. Hanscom, the then guardian of the estate of James, to institute suit against Compton's executrix and all of his sureties on the three bonds.

We condense the statement made by the Court of Civil Appeals as follows: Compton having appropriated to his own use the cash on hand, he borrowed money from his brother and from Adoue & Lobit, bankers in Galveston, and, before the bond was executed, made a deposit with Adoue & Lobit in the sum of $11,913.83, which was the full amount of the cash due by him to the estate. The bankers issued to Compton a certificate of deposit, as guardian, which certificate, with some gas stock and wharf stock which belonged to the estate, he deposited with C. H. Moore and M. Marx, who became sureties on his second bond. After the deposit was made the sureties held the certificate of deposit and the money remained in bank to the credit of Compton, as guardian, until the third bond was given and approved. Adoue & Lobit were solvent bankers and the certificate of deposit would have been paid by them at any time. After the third bond was given Compton misappropriated the cash on hand and died without making restitution of the same.

Hanscom, in pursuance of the decree of the County Court, instituted suit in the District Court of Galveston County against Mrs. Jennie B. Compton, independent executrix, of A. J. Compton, deceased, the American Surety Company of New York, C. H. Moore and M. Marx and the United States Fidelity and Guaranty Company, the sureties upon the three several bonds. At the trial the Honorable District Judge instructed the jury to return a verdict in favor of the plaintiff against all of the defendants, which was accordingly done, and the court entered a judgment in favor of the plaintiff against the independent executrix and against each and all of the sureties, with a provision that the American Surety Company would ultimately be liable for the whole amount and that C. H. Moore and M. Marx and the Fidelity and Guaranty Company should be equally liable as between themselves. Upon appeal the Court of Civil Appeals affirmed the judgment as to the executrix and reversed it as to the other parties, rendering judgment in favor of the American Surety Company, that the plaintiff take nothing by his suit and that the said Surety Company recover all costs expended, etc.; "that as to C. H. Moore and M. Marx and the United States Fidelity and Guaranty Company the guardian have judgment for $11,839.85 with interest at the rate of 6 percent per annum from February 18, 1905, and for all costs occasioned by them in this court and the lower court."

When Compton deposited in the bank of Adoue & Lobit the sum

of money due to the estate of Menard James and the money was entered to the credit of A. J. Compton, guardian, the fund so deposited became the money and property of the ward's estate. (Anderson v. Walker, 93 Texas, 119; Skipwith v. Hurt, 94 Texas, 322.)    Lobit testified that the bank would have paid the money on presentation of the certificate of deposit by Compton, or by any person holding it with Compton's endorsement on it.    Adoue & Lobit were notified by the fact that Compton made the deposit as guardian that the money belonged to the estate of the ward and they could not lawfully pay it to any person except by Compton's order and then only for the uses of the estate; that is, they could not have knowingly applied the money in their hands to the payment of any order made by Compton in any other character than that of guardian, nor could they have applied the money to the payment of any debt due from Compton, personally, to them or to any other person.    The fact that the certificate of deposit, with the stocks mentioned, were placed in the hands of Moore & Marx to be preserved for the estate so long as they were upon the bond did not affect the title of the estate to the money, but, on the contrary, evinces a purpose to preserve it for the benefit of the estate, and, in their hands as such securities, the money was in law in the possession of the estate and belonged to the estate.    (Johnson v. Jones, 68 S. W. Rep., 14.)    If any arrangement to the contrary had been made between Moore and Marx and Compton, it could not have affected the title of the estate, nor could it in any way have interfered with the power of the County Court, in which the estate was being administered, in the disposition of the said money.    The money being in the bank under the circumstances named, the County Court had the authority to direct the disposition of it by the guardian, but the guardian had no legal authority to make any loan or investment of the money except by the direction of the County Court. (Rev. Stat., arts. 2640, 2641, 2642, 2643, 2644.)    Complete restitution of the misapplied funds having been made by Compton, the bond upon which the American Surety Company of New York was surety was satisfied and the order by which the said surety was discharged from the further obligation terminated its liability for that fund.    If it be true that Compton intended to get possession of the fund and again to misapply it, such evil purpose could not affect the discharged surety.    There can be no question that the County Court had jurisdiction of the subject matter and of the parties when it made the adjudication by which the American Surety Company was discharged from its liability upon the bond and the Court of Civil Appeals correctly rendered judgment in favor of said American Surety Company of New York.

When the third bond was given by Compton as guardian of James, all of the money which belonged to the estate was in the hands of the bankers, Adoue & Lobit, and, together with the shares of stock, was by the said bankers delivered to Compton and thereby the order of the County Court which discharged Moore and Marx from further liability upon the second bond became effective and the said Moore and Marx can not be held liable for any subsequent mis-

application of the funds by Compton, unless the contention of the plaintiffs and of the Fidelity and Guaranty Company be sustained, to the effect, that the order discharging Moore and Marx was void. This is the next question to be decided.

The law applicable to collateral attacks upon judgments, like the one under consideration, is clearly and forcibly expressed by Mr. Justice Denman in the case of Templeton v. Ferguson, 89 Texas, 57, in this language: "In such cases it may be considered the settled rule that, if the record of the cause in which such judgments were rendered does not negative the existence of the facts authorizing the court to make the particular order, the law conclusively presumes that such facts were established by the evidence before the court when such orders or judgments were rendered, and evidence of matters dehors the record to the contrary will not be received." (Martin v. Robinson, 67 Texas, 379; Bouldin v. Miller, 87 Texas, 366.)

In Martin v. Robinson, above cited, Judge Stayton said: "The rule suggested in this respect, in some of the cases, would be the rule in a proceeding appellate in character, if the cause be tried de novo; but it seems to us that no such rule can exist when the validity of an administration granted by a decree of a court of record having general jurisdiction is sought to be attacked or held for naught in a collateral proceeding, for if it would be possible to prove facts sufficient to sustain the administration it must be presumed, on such attack, that these very facts were proved before administration was granted. We understand the rule to be, when the judgment or decree of such a court is collaterally called in question, that it must be deemed valid unless it appears that no facts could have been shown which would render it so."

Article 1949, Revised Statutes, is in this language: "An executor or administrator may be required to give a new bond in the following cases:

"1. When the sureties upon the bond or any one of them shall die, remove beyond the limits of the State, or become insolvent.

"2. When in the opinion of the county judge the sureties upon any such bond are insufficient.

"3. When in the opinion of the county judge any such bond is defective.

"4. When the amount of any such bond is insufficient.

"5. When the sureties or any of them petition the court to be discharged from future liability upon such bond.

"6. When the bond and the record thereof have been lost or destroyed."

It will be seen that a broad discretion is given to the judge of the County Court over the subject of demanding or permitting new bonds to be given by the guardian or administrator. The county judge in the case now before us was authorized to take the bond in question if any one of the conditions named in Article 1949 existed at the time. For instance, if in the opinion of the county judge the sureties upon the second bond were insufficient; or if, in his opinion, the bond was in any wise defective, or if the sureties or any

one of them petitioned the county judge to be discharged from liability on the bond, the order would be sustained. The burden did not rest upon Moore and Marx to prove the existence of the facts which under the statute would sustain the order, but it rested upon the plaintiffs Hanscom and the Fidelity and Guaranty Company to prove that they did not exist by something which appears of record in the case. In Bouldin v. Miller, above cited, the question was upon the validity of an order by the Probate Court for sale of land by a guardian and it did not appear in the record that the required notice had been given and it was contended that there was not sufficient time in which notice could have been given. Mr. Justice Denman said: "The law, in the absence of proof, presumes that all jurisdictional facts existed. If notice was a jurisdictional fact, the defendant relying upon the judgment was not called upon to establish such notice, nor to show the order of sale to have been entered at such a time as to make notice possible; but the burden was upon plaintiffs to establish the fact that notice was not given. We therefore conclude that the probate proceedings, aided by the legal presumptions above discussed, were not void, but were sufficient to pass the title of plaintiffs to the purchaser at the guardian's sale."

It may have been that Moore and Marx joined with Compton the guardian in the request to the court to take a new bond, and if it be a fact that no application was made in writing, still it would have been an error of law for the court to have acted upon the application of the sureties, made orally, but would not render the order void. So far as the record shows the judge who made the order may have considered the bond defective although in fact it may have been perfectly correct in its forms and provisions, which would have been an error that would not render the order invalid. In the condition of this record the law will presume that one or more of the facts enumerated in the statute did exist in order to sustain the action of the court which had jurisdiction both of the subject matter and of the parties concerned therein.

Upon giving the third bond Moore and Marx were discharged from liability for any future misapplication of the funds by Compton, and the full restitution of the money which had been misapplied under the first bond discharged the American Surety Company of New York from liability on that bond. It therefore follows that the ultimate and sole liability in this transaction devolved upon the Fidelity and Guaranty Company of Baltimore under the third bond. It is therefore ordered that the judgment of the Court of Civil Appeals in favor of the American Surety Company of New York be and the same is hereby affirmed. It is further ordered that the judgment of the said Court of Civil Appeals as to the liability of Moore and Marx and of the United States Fidelity and Guaranty Company of Baltimore, Maryland, be and the same is hereby reversed, and this court now here proceeds to render such judgment as should have been rendered by the said courts as follows: It is ordered that the plaintiff Hanscom take nothing as against Moore and Marx, who shall go hence without day and recover of the plain-

tiff Hanscom, all of their costs in all of the courts; it is also ordered that judgment be here entered in favor of W. L. Hanscom, plaintiff, against the United States Fidelity and Guaranty Company of Baltimore, Maryland, as surety upon the bond of A. J. Compton, guardian, and that the said W. L. Hanscom recover all costs in all of the courts as between him and the said last named company.

### ON MOTION FOR REHEARING.

It does not appear from the record in this case that Mrs. Compton, the executrix, appealed from the judgment of the District Court, therefore the reversal of the judgment as to the sureties did not disturb the rights of the plaintiff as against Mrs. Compton under the District Court judgment. It appears from the record, as we have it, that Moore, Marx and the American Surety Company were all made parties to the petition in the first instance, therefore, Hanscom, the guardian, was liable to the cost accruing by reason of making them parties. The motion of W. L. Hanscom, guardian, and the United States Fidelity & Guaranty Company will be overruled. The motion of the American Surety Company of New York, C. H. Moore and M. Marx will be granted insofar as to add to the judgment as follows: "And that the United States Fidelity & Guaranty Company take nothing upon its cross bill against C. H. Moore, M. Marx and the American Surety Company, and that said Moore, Marx and the Surety Company go hence without day and recover of the Fidelity & Guaranty Company all costs incurred in defending against the said cross bill."

*Reversed and rendered.*