## YOUNG et al. v. GOETTING et al.

(Circuit Court of Appeals, Fifth Circuit. November 24, 1926.)

No. 4752.

**1. Banks and banking ⬅111—Representations made by bank president to proposed surety as to borrower's assets, in connection with proposed loan by bank, held binding on bank.**

False representations by the president of a bank, made in connection with a proposed loan by the bank to one solicited to, and who did, indorse the borrower's note, respecting the financial condition of the maker, were within the scope of his authority and binding on the bank.

**2. Bills and notes ⬅239—That maker promised to pay indorser did not preclude latter from denying liability for fraud of payee.**

That the maker of a note promised to pay an indorser for his indorsement did not preclude the latter from denying liability on the ground that he was induced to make the indorsement by false representations of the payee.

**3. Appeal and and error ⬅273(5)—Exception to charge must call attention to particular part objected to.**

Objection to charge, which does not correctly refer to or describe part of charge attacked, is insufficient.

In Error to the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Action at law by Sam D. Young, receiver of the National Border Bank of El Paso, Tex., and others, against C. A. Goetting and T. B. Henderson. From a judgment in favor of defendant Henderson, plaintiffs bring error. Affirmed.

A. H. Culwell, of El Paso, Tex. (W. H. Burges and A. H. Culwell, both of El Paso, Tex., on the brief), for plaintiffs in error.

Allen Rowell Grambling, of El Paso, Tex. (Allen R. Grambling and Jones, Hardie & Grambling, all of El Paso, Tex., on the brief), for defendants in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action against C. A. Goetting, the maker, and T. B. Henderson, the indorser, of two promissory notes payable to the Border National Bank, each dated December 29, 1923, one being for $2,000, and the other for $4,000. The indorser set up as a defense that he was induced to indorse the notes by alleged representations made to him by Crawford Harvie, the president of the payee bank, which included a representation that said Goetting did not owe anything, and by a written statement as

to the financial condition of Goetting, which was furnished to him by said Harvie, which showed no liability of Goetting and that he had assets worth more than $13,000, which representations and statement were false, in that Goetting then owed said bank $1,500, and his assets were incumbered for debts he owed.

[1] Evidence adduced tended to prove the following: Some time prior to the date of the notes sued on, the officers of the payee bank agreed with Goetting to furnish him money required in carrying out a contract he proposed to get for certain road work in New Mexico. Pursuant to that agreement the bank furnished Goetting $1,500 to pay for the bond he had to give upon the road contract being awarded to him, and he gave the bank a note for that amount, which was unpaid when the notes sued on were made. After Goetting made the $1,500 note, he applied to the cashier of the bank for the loan of an amount needed by him to go ahead with the road work. The cashier told him he did not think he could let him have the money unless he had some security, and then the cashier said, "You better go and talk to Mr. Harvie," who was the president of the bank. Thereupon Goetting saw Mr. Harvie. Harvie stated that he did not think he could let Goetting have the money, unless he could get somebody to indorse for him. Harvie suggested to Goetting that T. B. Henderson was interested in that kind of thing, and gave Goetting a note introducing the latter to Henderson. Harvie also saw Henderson and told him that, if he would indorse Goetting's notes to the bank, he could get some compensation, stated that Goetting did not owe anything, and showed to Henderson a financial statement as to Goetting, which showed that he had assets over $13,000 and no liability whatever.

Relying on those representations and statements, which were false, and in consideration of Goetting's note to him in the sum of $3,000, Henderson indorsed the notes sued on. The court refused to give a charge directing the jury to find a verdict against both the maker and indorser of the notes, and also requested charges to the effect that Henderson would be liable on the notes, if he indorsed them for a consideration promised by Goetting to be paid to him. At the conclusion of the court's charge to the jury, counsel for plaintiff stated to the court: "We object to that portion of the charge wherein the court directed the jury to return a verdict in favor of Henderson, if they found that the representations as alleged in his an-

swer were true, for the reason that such charge is too general."

It was contended that the falsity of the above-mentioned representations made to the indorser of the notes by the bank's president did not affect the indorser's liability to the bank. In support of this contention, counsel referred to the following, among other, decisions to the effect that a statement by a bank official, having no relation to any business transaction with the bank, as to the standing or solvency of a third person, is not binding on the bank. Citizens' Trust & Savings Bank v. Falligan (C. C. A.) 4 F. (2d) 481; First Nat. Bank v. Marshall & Ilsley Bank (C. C. A.) 83 F. 725. Such decisions are not applicable where the statements or representations in question were made by a bank official while acting within the scope of his authority in transacting the bank's business. What such an official does within the scope of the business of the bank intrusted to him, his principal does. Arnold v. National Bank of Waupaca, 126 Wis. 362, 105 N. W. 828, 3 L. R. A. (N. S.) 580.

As above indicated, evidence showed that the false representations and statements in question were made in connection with a pending application for a loan, first made to the bank's cashier, and by him referred to its president, who, by means of such false statements and representations, induced Henderson to indorse the notes made to the bank when it acted favorably on Goetting's application for a loan. The bank was responsible for what its president did and said in acquiring the notes sued on. It follows that the court did not err in refusing to direct a verdict against the indorser, Henderson; there being evidence to the effect that he was induced to become indorser by material false representations for which the payee of the notes was responsible.

[2] The fact that the maker of the notes promised to pay Henderson for becoming the indorser thereof did not preclude the latter from denying liability on the ground that he was induced to indorse the notes by the payee's false representations of material facts. Like any other contract, the contract of a surety, whether voluntary or compensated, is vitiated by the fraud of the party seeking to hold him liable as surety. Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S. W. 1061, 1067, 106 S. W. 876, 130 Am. St. Rep. 803.

[3] The court's charge did not contain a direction to the jury to return a verdict in favor of Henderson, if they found that the representations as alleged in his answer were

true. The above set out objection, stated by counsel at the conclusion of the court's charge to the jury, did not call the court's attention to anything really contained in that charge which was regarded as erroneous. If for no other reason, that objection was insufficient, because it failed correctly to refer to or describe any part of the charge given by the court. McDermott v. Severe, 202 U. S. 600, 26 S. Ct. 709, 50 L. Ed. 1162.

The record shows no reversible error. The judgment is affirmed.